UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

TRENTON DIVISION

3:11-cr-00452-FLW-8

UNITED STATES OF AMERICA

vs

KASHEEF MCCALLA
Defendant.

RECEIVED
APR 14 2020
AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

---

APPLICATION FOR MODIFICATION OF SENTENCE

PURSUANT TO 18 U.S.C. SECTION 3582 (c) (1) (A) (i)

AS A RESULT OF COVID-19

---

Kasheef McCalla # 63523-050

FCI Fort Dix

P. O. Box 2000

Joint Base MDL, NJ 08640

1

## PRELIMINARY STATEMENT

In light of the extreme danger posed by COVID-19, Kasheef McCalla (hereinafter the Defendant) submits the instant application under 18 U.S.C. Section 3582 (c) (1) (A) (i) to request that the Court decrease Petitioner's sentence by 20 months (from 120-month to 100-month), which will cause him to be immediately transferred from his place of confinement at FCI Fort Dix, P. O. Box 2000, Joint Base MDL, NJ 08640 to home confinement. The Defendant is serving the last 20 months of his 120-month sentence and is waiting on designation to a halfway house in the New Jersey for sometimes in June 2020.

The Federal Correctional Institution, Fort Dix (FCI Fort Dix) is a low-security United States federal prison for male offenders in New Jersey. It is operated by the Federal Bureau of Prisons. A satellite prison camp houses minimum-security male inmate. FCI Fort Dix is located in Burlington County on Joint Base McGuire-Dix-Lakehurst. It is approximately 40 miles (64 km) from Philadelphia. Fort Dix is the largest single federal prison in the United States in the number of inmates housed there.[

The Defendant is presently incarcerated with 2971 other inmates in very close quarters. The Defendant resides in a unit in a dorm-type room with twelve other inmates and there are six bunk beds per room. The 350 inmates in the unit shared twenty-one toilets, nine urinals, and thirteen showers, and neither is cleaned after use. Inmates are issued masks but most do not wear them and it is not mandatory that they do so.

If the Defendant is approved for early home confinement, he will stay at 216 Wegman Parkway, Jersey City, NJ 07305. The residence has an approved landline phone with the telephone number of 201) 434-2848. The Defendant has made a request to his case manager concerning early home confinement; and, the case manager denied the request and stated that he

2

was not eligible for early home confinement; because his PATTERN score was a low and it needed to be a minimum. **See Exhibit I.**

The Defendant wears his mask because he has a pre-existing medical condition that make him a prime candidate to catch COVID-19. Last year, the Defendant has an asthma attack and had to be taken to an outside hospital. Additionally, the Defendant is an only child, but he has a son and a 7-year old daughter. There have been a few inmates and staff that have tested positive for the COVID-19. Some of the staff at the institution wears PPE's (gloves and mask), but not all of them wear protective gear. None of the inmates have been screened for COVID-19 let alone for a fever or symptoms.

Since no alcohol is permitted in the facility, there are no alcohol-based hand sanitizers. While soap is available, the common bathrooms that every inmate is forced to use are not cleaned any more frequently as a result of the pandemic. Inmates are required to use the computers and phones to communicate with family and friends, but neither is cleaned regularly. There is not a separate area in Fort Dix for sick inmates to self-quarantine, so the Defendant is forced to sleep in a bunk bed right next another inmate and with another inmate on the top bunk (within 6 feet of him).

If the Defendant has not already contracted COVID-19 by the time this application is filed, he is almost certain to contract it within the next few days unless immediate action is taken. The Defendant is 35 years old. The exigency circumstances caused by this deadly virus present extraordinary and compelling reasons to take action.

Accordingly, the Defendant respectfully requests that the Court issue an Order pursuant to 18 U.S.C. Section 3582 (c) (1) (A) (i) to decrease the Defendant's sentence by twenty (20)

months so that he may be immediately placed on home confinement to serve the remaining months of his sentence in home confinement. It may literally save his life, and others.

## II. DISCUSSION

**A. LEGAL STANDARD** -- Pursuant to 18 U.S.C. Section 3582 (c) (1) (A) (i), a Court may modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors set forth in Section 3553 (a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction." 18 USC Section 3582 (c) (1) (A) (i).

**B. OFFENSE AND SENTENCE** -- On May 18, 2012, the Defendant pled guilty to two of seven counts of a twenty-two-count Fourth Superseding Indictment. Count Three charged conspiracy to distribute 100 grams or more of heroin, in violation of 21 U.S.C. Section 846, 841 (a) (1) and (b) (1) (B); and Count Twenty-One charged possession of a firearm in furtherance on a drug trafficking crime, in violation of 18 U.S.C. Section 924 (c). On November 4, 2012, the Defendant was sentenced to consecutive sentences of 60 months on Counts Three and Twenty-One (total sentence of 120-month) of the Fourth Superseding Indictment.

**C. COVID-19 VIRUS COMPELLS IMMEDIATE REDUCTION OF THE DEFENDANT'S SENTENCE TO PROTECT HIM AND OTHERS FROM THE DEADLY VIRUS** - The high risk of contracting COVID-19 due to the conditions at F. C. I. Fort Dix, where the Defendant is currently housed, compels immediate reduction of his sentence by 20 months so that he can be immediately transferred to home confinement. The circumstances

created by COVID-19 present "extraordinary and compelling reasons" that "warrant such a reduction." 18 USC Section 3582(c) (1) (A) (i).

As of April 10, 2020, at 6:30 am., COVID-19 has infected over 475,873 people in the United States, leading to at least 17,820 deaths. By the time the Court reviews this application that number will have significantly increased. New Jersey has not seen the confirmed cases and death as its sister state of New York, but New Jersey has 54,588 confirmed cases with 1932 deaths as of April 10, 2020. Fort Dix has had a few confirmed cases of COVID-19 and there will be several more cases, because, it is impossible to have "social distancing" in the cramp quarters in which the Defendant are confined.

The Centers for Disease Control and Prevention (CDC) shows that nearly 40% of patients hospitalized from coronavirus were 20 to 54 years old. Everybody must take every necessary action to protect vulnerable populations and the community at large. Conditions at Fort Dix create the ideal environment for the transmission of the contagious disease. Residents cycle in and out of the prison from all over the nation, and people who work in the facilities leave and return daily, without screening. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[1]

Attorney General William Barr issued a memo which outlined eligibility for early home confinement. Barr's memo specified what the BOP should consider in making its decisions:

---

[1] "Achieving A Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020).

- inmate's age and vulnerability to COVID-19 under Centers for Disease Control and Prevention (CDC) guidelines;

- The inmate's security level, with priority given to inmates residing in low and minimum-security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment;

- The inmate's PATTERN score, with inmates who have anything above a minimum score not receiving priority treatment;

- Whether the inmate has a "demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;" and

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community.

The Defendant is 35 years old and a first-time non-violent offender. The Defendant has a pre-existing health issue -- he suffered from asthma which he used an inhaler and wheelzer daily to help with his breathing. The Defendant has taken and completed several courses, classes, and seminars that should help him to find gainful employment once he is released and the COVID-19 is resolved. The Defendant is a low-security inmate with clear conduct. He is not a member of any gangs and he has not engaged in any violent conduct.

The current pandemic caused by the spread of COVID-19 gives rise to serious concerns for those serving the remainder of their sentences at camps or halfway houses. COVID-19 spreads mainly between people who are in close contact with one another (within about 6 feet) through respiratory droplets produced when an infected person coughs or sneezes. Individuals who contract the virus may not show symptoms for 10-12 days, but they are still contagious during that time and may infect others with whom they interact. This "asymptomatic

transmission" makes the virus unusually dangerous as carriers can be unaware of their own infection. It is for this reason that given our lack of any cure or vaccine, social distancing is the only method by which to slow the spread of COVID-19.

Social distancing and staying at home are particularly vital because studies suggest that coronaviruses (including preliminary information on the COVID-19 virus) may persist on surfaces for a few hours or up to several days. "According to a recent study published in the New England Journal of Medicine, SARS-CoV-2, the virus that causes COVID-19, can live in the air and on surfaces between several hours and several days. The study found that the virus is viable for up to 72 hours on plastics, 48 hours on stainless steel, 24 hours on cardboard, and 4 hours on copper. It is also detectable in the air for three hours. Hence, the rapid spread of COVID-19 can result from fomites (objects or material that are likely to carry infections), such as elevator buttons, restroom taps, and clothes.

Some federal judges have begun taking action in light of the extraordinary danger inmates face in BOP facilities. On March 18, 2020, Judge Nathan reversed her prior denial of bail, citing the high risk of COVID-19 infection in jails: [S]ince the March 6 hearing, the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent. United States v. Stephens, No. 15-cr-95 (AJN), 2020 US Dist LEXIS 47846, at *3-5 (SDNY Mar. 18, 2020). See, e.g., United States v. Raihan, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12-19 (E.D.N.Y. Mar. 12, 2020) (deciding to continue a criminal defendant on pretrial release rather than order him remanded to the Metropolitan Detention Center due, in part, to the Magistrate Judge's recognition of the fact that "[t]he more people we crowd into that facility, the more we're increasing the risk to the community").

7

The conditions for residents of Fort Dix create a grave risk of exposure to COVID-19. The inmates are not allowed to use any alcohol-based hand sanitizers, which is currently the most effective way to sanitize hands and surfaces. On a daily basis, the Defendant is forced to have interactions in close proximity with 350 inmates housed in his unit and with several staff members that rotate from the camp, to the Low-security Federal Correctional Institution (where 2729 inmates are housed) thereby increasing his risk of being infected. The Defendant's exposure to this deadly virus is a virtual certainty. Unquestionably, the risk of transmission to and from the Defendant is exponentially greater at Fort Dix than if he served the remainder of his sentence on home confinement. These risks are especially serious because the Defendant has a pre-existing health-related issue. And, therefore more vulnerable to suffering from severe symptoms and death if he contracts COVID-19.

Home confinement for the Defendant will promote "social distancing" that saves lives by reducing transmission. By permitting the Defendant to move to home confinement 20 months earlier, the risk that the Defendant will contract COVID-19 from other inmates, many of whom are currently sick (likely with COVID-19), is eliminated.

Finally, the Defendant is willing to implement any additional measures deemed necessary to reassure the Court and the Bureau of Prisons of his whereabouts and compliance with his sentence, including, but not limited to, continuing to be financially responsible for his "subsistence fees" at the RRC (halfway house) and wearing an ankle monitor.

Accordingly, the Defendant respectfully requests this Honorable Court to reduce the Defendant's sentence by 20 months so that he may be immediately placed by the BOP in home confinement.

**D. EXHAUSTION SHOULD BE EXCUSED AS FUTILE AND BECAUSE DOING SO WILL CAUSE IRREPARABLE INJURY** -- Due to the recent enactment of 18 U.S.C. Section 3582 (c) (1) (A) (i) as part of the First Step Act, there is virtually no case law interpreting the exhaustion requirement. However, in general, "[e]xhaustion of administrative remedies is required 'for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.'" Moscato v FBOP, 98 F.3d 757, 761-62 (3rd Cir. 1996).

Courts, however, have excused exhaustion when it would not promote these goals. See, e.g. Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (Roth, J., concurring) (exhaustion excused upon petitioner showing futility); Carling v. Peters, No. Civ. A 00-CV-2958, 2000 U.S. Dist. LEXIS 10288, WL 1022959, at *2 (E.D. Pa. July 10, 2000) (exhaustion excused where delay would subject petitioner to irreparable injury);" and, Lindsay v. Williamson, 2007 US Dist. LEXIS 54310, at *6-7 (MD Pa 2007). Additionally, Courts have found that, despite the exhaustion requirement, they may issue Orders under the above circumstances, "because the exhaustion doctrine is based upon comity and not jurisdiction", Williams v. James, 770 F Supp 103, 106 (WDNY 1991) (citing Wheeler v. Kelly, 639 F. Supp. 1374, 1377 (E.D.N.Y. 1986), aff'd, 811 F.2d 133 (2d Cir. 1987)).

Additionally, several federal appellate courts, in interpreting a different portion of 18 U.S.C. Section 3582 (c) have held that the language of that subsection is non-jurisdictional. United States v. Taylor, 778 F.3d 667, 671 (7th Cir. 2015) ("[Section] 3582 is not part of a jurisdictional portion of the criminal code but part of the chapter dealing generally with sentences of imprisonment. . . [n]or is subsection (c) phrased in jurisdictional terms."); see also

United States v. Calton, 900 F.3d 706, 711 (5th Cir. 2018) (citing United States v. Caraballo-Martinez, 866 F.3d 1233, 1243 (11th Cir. 2017); United States v. Anderson, 772 F.3d 662, 667 (11th Cir. 2014); United States v. Beard, 745 F.3d 288, 291 (7th Cir. 2014); United States v. Trujillo, 713 F.3d 1003, 1005 (9th Cir. 2013); see also United States v. Green, 886 F.3d 1300, 1306 (10th Cir. 2018).

Accordingly, subsection (c) should not be understood to impose jurisdictional requirements. While prior cases governing compassionate release under earlier versions of the statute may create an ongoing requirement that defendants request that the BOP file compassionate release motions before filing on their own, the waiting period cannot be understood as a jurisdictional requirement. Here, we submit that the Court may Order the requested sentence modification without requiring the Defendant to exhaust his administrative remedies because exhaustion would be futile and because it would cause irreparable injury as discussed above.

### III. CONCLUSION

For the foregoing reasons, the Defendant respectfully requests this Honorable Court to modify the Defendant's sentence by 20 months so that he will be immediately placed on home confinement. The Defendant submits that this is the appropriate and humane approach to dealing with this pandemic and the global emergency of this magnitude.

Dated: 4-13-20

Kasheef McCalla # 63523-050
FCI Fort Dix
P. O. Box 2000
Joint Base MDL, NJ 08640

BP-A0148
JUNE 10
U.S. DEPARTMENT OF JUSTICE

INMATE REQUEST TO STAFF CDFRM

FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: |
| --- | --- |
| Unit Team | 4-8-2020 |
| FROM: Kasheef McCalla | REGISTER NO: 63523-050 |
| WORK ASSIGNMENT | UNIT: 5802 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

I'm requesting to be placed on home confindment early becouse of my bad asthma which makes me most vulnerable to the virus.

Landline
201-434-2848

Address
216 Wegman Parkwy
Jersey City, NJ 07305

(Do not write below this line)

DISPOSITION

According to the Attorney General Memorandum dated 3/26/20, you do not meet the requirements.

| Signature Staff Member | Date |
| --- | --- |
| | 4/9/20 |

Record Copy - File; Copy - Inmate

Prescribed by P5511

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER

SECTION 6

MONTGOMERY VILLAGE, MD
20886
APR 13, 20
AMOUNT
$29.20
1007
08608
R2304M115892-11

PRESS FIRMLY TO SEAL

RETURN RECEIPT REQUESTED



**UNITED STATES POSTAL SERVICE®** | **PRIORITY MAIL EXPRESS®**

EJ 123 096 115 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( )

Kasheef McCalla 63523-050
FCI Ft. Dix
P.O. Box 2000
Fort Dix NJ 08640

**PAYMENT BY ACCOUNT** (if applicable)
USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. N

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

**ORIGIN (POSTAL SERVICE USE ONLY)**

☑ 1-Day   ☐ 2-Day   ☐ Military

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|
| 20879 | 4/14/20 | $ 26.35 |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
|---|---|---|---|
| 4/13/20 | ☐ 10:30 AM ☐ 3:00 PM ☑ 12 NOON | $ — | $ — |

| Time Accepted | 10:30 AM Delivery Fee | Return Receipt Fee | Live Animal Transport |
|---|---|---|---|
| ☐ AM ☐ PM | $ — | $ 2.85 | $ — |

TO: (PLEASE PRINT)   PHONE ( )

Clerk US District Court
402 E State Street Rm. 2020
Trenton NJ 08608

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
|---|---|---|
| $ | $ — | 29.2 |

| Weight | ☐ Flat Rate | Acceptance Employee Initials |
|---|---|---|
| lbs. ozs. | | |

ZIP + 4® (U.S. ADDRESSES ONLY)

0 8 6 0 8 - ___

- For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
- $100.00 Insurance Included.

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |

PEEL FROM THIS CORNER

LABEL 11-B, MARCH 2019   PSN 7690-02-000-9996

