UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : Crim. Action No. 11-452 (FLW) |
| KASHEEF McCALLA, | : **OPINION** |
| Defendant. | : |

**WOLFSON, Chief Judge:**

Defendant Kasheef McCalla ("Defendant"), a prisoner currently serving a 120-month sentence at FCI Fort Dix ("Fort Dix"), has renewed his previous motion for compassionate release pursuant to the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A). The Court denied Defendant's prior motion because he failed to exhaust his administrative remedies under the statute. In the instant motion, Defendant again seeks release from Fort Dix to home confinement based on various medical ailments. The Government opposes Defendant's motion, maintaining, among other things, that his condition is well managed at Fort Dix, and that he would present a danger to the public if released from prison. For the reasons set forth below, Defendant's motion is **GRANTED.**

I.   **FACTUAL BACKGROUND**

Defendant was a member of a drug trafficking gang called the "Detroit Boyz," which conspired to distribute large quantities of cocaine and heroin throughout the metropolitan areas of Trenton, New Jersey, and Morrisville, Pennsylvania. Presentencing Investigation Report ("PSR"), ¶¶ 54-56. On June 10, 2011, Defendant was arrested after he was pulled over in Dover, Delaware; a subsequent search of his car revealed 245 grams of cocaine in the trunk of his rental vehicle, and 26.2 more grams of cocaine in Defendant's pocket. PSR, ¶ 118. On that same date,

1

Defendant's residence was searched and law enforcement recovered an additional 24.5 grams of cocaine, and a semiautomatic pistol with ten rounds of ammunition in its magazine. PSR ¶ 124. On August 2, 2011, Defendant was released from prison to await trial pursuant to a court order that confined him to his household. ECF No. 121.

On May 18, 2012, Defendant pled guilty to the following two criminal charges: (1) conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); and (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. ECF Nos. 302, 320. On November 14, 2012, this Court sentenced Defendant to two terms of imprisonment of 60 months for each charge, for an aggregate sentence of 120 months. ECF No. 388. In addition, Defendant was sentenced to 5 years of supervised release following his imprisonment, and he was ordered to pay a special assessment of $200. ECF No. 388. On December 28, 2012, Defendant self-surrendered to the Bureau of Prisons ("BOP") at FCI Fairton, and he has since transferred to Fort Dix, with a scheduled release date in December 2021. To date, Defendant has served about seven-and-a-half years of his ten-year prison sentence.

On April 8, 2020, Defendant filed a letter application in his civil habeas matter, seeking "early release" from imprisonment, in light of the "current situation with the corona virus pandemic." *See McCalla v. United States*, No. 13-6977, ECF No. 24. On April 13, 2020, this Court denied Defendant's letter request without prejudice, because he had failed to exhaust his administrative remedies with the BOP, or satisfied the prefiling waiting period as required under the FSA, before seeking relief from the Court. ECF No. 25. In the Order, the Court explained that the procedural prerequisites under the statute could not be waived. *Id*. On that same date, Defendant filed a motion in his criminal case, entitled "Application for Modification of Sentence

Pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i) as a Result of Covid-19," wherein he sought to excuse the exhaustion requirements under § 3582(c)(1)(A)(i) of the FSA. ECF No. 497. However, on April 15, 2020, this Court again denied Defendant's request, for the reasons set forth in the previous April Order. ECF. No 498. On April 21, 2020, Defendant submitted a formal letter application to the BOP seeking compassionate release, to which the BOP did not respond.

On May 22, 2020, Defendant filed the instant motion seeking compassionate release under the FSA. ECF No. 501. Therein, Defendant requests permission from this Court to serve the remainder of his sentence on home confinement, at his mother's residence in Trenton, New Jersey. In support, Defendant argues that he has a significant risk of contracting Covid-19 while incarcerated, and that he is at risk of death or developing significant complications if he is infected with the virus, because he suffers from chronic asthma and other ailments, including high blood pressure, overweightness, chest pains, and stage 3 chronic renal disease. In addition, Defendant maintains that he is not a danger to the public, and that he will not engage in further criminal conduct when released. The Government opposes Defendant's motion on two grounds, arguing that he did not fully exhaust his administrative remedies under the FSA, and that his request for compassionate relief is inappropriate, based upon the factors set forth in 18 U.S.C. § 3582(a).

## II.   DISCUSSION

Once a federally imposed prison sentence commences, a federal district court has limited authority to modify that sentence. *Dillon v. United States*, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.") (quoting 18

U.S.C. § 3582(b)). One such authority for modifying a prison sentence is found in the recently-enacted First Step Act, which allows a defendant to be afforded compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in relevant part:

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the facts set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i). Thus, a defendant seeking a reduction in his sentence under the First Step Act "bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *United States v. Sellers*, Crim. No. 10-434, 2020 U.S. Dist. LEXIS 72991, at *2 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); *United States v. Alexander*, Crim. No. 19-31, 2020 U.S. Dist. LEXIS 85609, at *6 (D.N.J. May 15, 2020) (citations omitted).

Congress did not define the term "compelling and extraordinary reasons," but instead directed the Sentencing Commission to define the term. See 28 U.S.C. § 994(t) (providing that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). While the Sentencing Commission previously defined that term as it relates to the BOP's discretion under the previous version of section 3582(c)(1)(A), it has not, however, updated its Policy Statement since the passage of the First Step Act. *See United States v. Rodriquez*, ___ F. Supp. 3d ___, 2020 U.S. Dist. LEXIS 58718, at *3 (E.D. Pa. Apr. 1, 2020); *see also* U.S. Sentencing Guidelines Manual ("U.S.S.G."), § 1B1.3, Application Note 1 (U.S. Sentencing Comm'n 2018).

Nevertheless, the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, but it "does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *Rodriquez*, 2020 U.S. Dist. LEXIS 58718, at *4 (alteration in original) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 581–82 (M.D.N.C. 2019)). The Policy Statement provides that a defendant may show extraordinary and compelling reasons for compassionate release based on the medical condition of the defendant, the age of the defendant, the defendant's family circumstances, or for "other reasons." U.S.S.G. § 1B1.13, Application Note 1. Relevant here, a defendant may show extraordinary and compelling reasons for release based on a medical condition where (1) "[t]he defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)," or (2) he or she is "(I) suffering from a serious physical or medical condition, (II) suffering from a serious function or cognitive impairment, or (III) experiencing deteriorating physical or mental health because that of the

aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id*; *see United States v. Epstein*, Crim. No. 14-2871, 2020 U.S. Dist. LEXIS 87653, at *7-8 (D.N.J. May 18, 2020).

A review of the pertinent medical evidence and certifications reveal that Defendant's medical condition is a compelling reason warranting release.[1] Defendant's mother, Linda McCalla ("Ms. McCalla"), has submitted a certification in which she states that her son was diagnosed with bronchial asthma since birth. Certification of Linda McCalla, ¶ 2. Ms. McCalla further states that Defendant suffered a collapsed lung when he was 4, which required an extensive hospitalization, and that he continues to experience asthma attacks and difficulties breathing while incarcerated. *Id*., ¶ 5. For instance, on May 12, 2019, after Defendant had an asthma attack in prison, he was brought to an outside hospital for medical treatment. *Id*., ¶¶ 8-9; Gov. Ex. B-1. On April 30, 2020, Defendant required medical intervention and the provision of a new prescription inhaler, because he was experiencing difficulties breathing. *Id*., ¶ 10. And, while this motion was pending, Defendant had another asthma attack that caused him to faint, after which he was brought to an outside hospital where he remained over night, before returning

---

[1] As a threshold issue, the parties dispute whether Defendant has satisfied the FSA's procedural prerequisites. In particular, the Government argues that Defendant's letter from April 21, 2020 to the BOP does not suffice for exhaustion purposes, because, in it, Defendant sought "to be placed on home confinement," not "compassionate release," and he did not include a required "proposed release plan." Thus, according to the Government, the BOP treated Plaintiff's application as a request to be placed on home confinement, which is statutorily different from a request for companionate release. However, I find that Defendant has exhausted his administrative remedies under the FSA, before seeking judicial review. Indeed, in an Order issued on April 15, 2020, the Court construed Defendant's prior application as a request for compassionate release, and denied it based on his failure to exhaust his administrative remedies. There is no dispute that the BOP was aware of this Court's Order. In fact, on the date after this Court denied Defendant's compassionate release request, the BOP provided Defendant with a pre-labeled form, entitled "Request for Administrative Remedy," which he then completed and submitted within that same week, *i.e.*, April 21, 2020. Therefore, based on the timing of these

6

to Fort Dix in the morning. Supplemental Certification of Linda McCalla, ¶ 5. In addition to his bronchial asthma, the medical evidence reveals that Defendant, who is overweight, suffers from high blood pressure and has stage 3 chronic renal disease (which is in remission). *Id*. at 6; Gov. Ex. B-1.

The Government does not dispute the extent of Defendant's medical ailments, but rather contends that his condition, as a whole, is well managed at Fort Dix. Government's Brief, at 7. However, while the doctors at Fort Dix have treated Defendant, the record reveals that on multiple occasions, despite the use of prescription medication, Defendant was required to receive outside medical care because of his severe asthma attacks. In addition, the Government concedes that Defendant's condition meets the threshold requirement of U.S.S.G. § 1B1.13, Application Note 1—that he suffers from a medical ailment, in particular, bronchial asthma, which renders him "less able to protect himself against an unfavorable outcome" from Covid-19. Government's Brief, at 7. In fact, Dr. Ravi Sood, a doctor at Fort Dix, concluded that Defendant "is at higher risk of severe Covid-19 illness because of his chronic bronchial asthma"—a medical assessment consistent with CDC guidelines. Gov. Ex. B-1. Indeed, according to the CDC, indiviudals who "are at higher risk for severe illness" from Covid-19 include those who, like Defendant, suffer from "chronic lung disease or moderate to severe asthma."[2] Moreover, despite the significant health risks that the virus poses to Defendant, he is unable to practice effective social distancing at Fort Dix, where he shares a cell with 11 other inmates. In contrast, Defendant will be able to decrease his exposure if he serves the remaining limited portion of his sentence on home confinement at his mother's residence in Trenton. Therefore, considering these circumstances, in

---

[2] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (lasted visited June 25, 2020).

total, Defendant has provided a compelling reason for compassionate release, based on his condition.

The Sentencing Commission's Statement also provides that a defendant will not be eligible for compassionate release, unless he does not present "a danger to the safety of any other person or to the community[.]" U.S.S.G. § 1B1.13(2). I find that Defendant satisfies this requirement, as he does not pose an immediate threat to the public. Indeed, although the Government contends that this was not Defendant's "first drug trafficking offense," and that his most recent wrongdoing involved the "use of a firearm," Defendant was charged with two non-violent felonies under 21 U.S.C. §§ 841(a)(1) / (b)(1)(B) and 18 U.S.C. §§ 924(c)(1)(A)(i) / (2) and, as of now, he is serving the remainder of his sentence at Fort Dix—a low risk institution of incarceration. Moreover, the firearm was not present at the time of Defendant's arrest, as law enforcement officers instead discovered the weapon during a subsequent search of his residence, which he shared with a codefendant. In addition, Defendant has served more than 75% of his sentence, which demonstrates a decreased risk of recidivism, and Defendant will be required to spend the remaining unserved portion of his sentence on home confinement. Defendant has demonstrated that he can adhere to this requirement, because, while he remained on pretrial release for his current charges, he served approximately 18 months on home confinement without incident. Therefore, Defendant is eligible for compassionate release, as he does not pose a threat to the public.

Having determined that Defendant has presented a compelling reason for release and that he is not a threat to the public, I turn to the factors set forth in 18 U.S.C. 3553(a). *See* 18 U.S.C. 3582(c)(1)(A) (explaining that the court must consider "the factors set forth in section 3553(a) to the extent that they are applicable."); *see also Epstein*, 2020 U.S. Dist. LEXIS 87653, at 8. To

that end, the following § 3553(a) factors are relevant to the outcome of this decision: "(1) the nature . . . of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment[.]" 18 U.S.C. § 3553(a).

Here, as to the first factor, the Court acknowledges the serious nature of Defendant's previous criminal wrongdoings and offenses. Nonetheless, in considering the § 3553(a) factors, the Court cannot disregard Defendant's higher risk of severe illness or death from Covid-19, based on his documented medical condition. Moreover, as to the second factor, the need for the sentence imposed, Defendant has completed 75% of his term of incarceration, which provides a deterrent effect, and he will serve the remaining portion of his sentence on home confinement.[3] Thus, the imposed sentence has and will continue to reflect the seriousness of Defendant's offense, promote respect for the law, and provide just punishment. In addition, because Defendant will remain on home confinement until the unserved portion of his sentence is

---

[3] While not dispositive, I note that federal district courts have denied a defendant's request for compassionate release where a defendant, despite presenting a compelling reason, has served no more than a small portion or limited fraction of his or her prison sentence. *See, e.g.*, *United States v. Hylander*, No. 18-60017, 2020 U.S. Dist. LEXIS 68698, at *2 (S.D. Fla. Apr. 20, 2020); *United States v. Linder*, No. 15-211, 2020 U.S. Dist. LEXIS 93922, at *4 (W.D. Pa. May 29, 2020); *United States v. Lonich*, No. 14-139, 2020 U.S. Dist. LEXIS 90634, at *3 (N.D. Cal. May 21, 2020); *United States v. Brady*, No. 19-136, 2020 U.S. Dist. LEXIS 86349, at *4 (S.D.N.Y. May 15, 2020)*; United States v. Doty*, 2020 U.S. Dist. LEXIS 109739, at *10 (S.D. W. Va. June 23, 2020); *United States v. Arthur Williams*, No. 15-10145, 2020 U.S. Dist. LEXIS 101926, at *1 (D. Mass. June 10, 2020); *United States v. Brinkley*, No. 12-80207, 2020 U.S. Dist. LEXIS 99540, at *1 (S.D. Fla. June 7, 2020); *United States v. Colonna*, No. 18-60012, 2020 U.S. Dist. LEXIS 95255, at *4 (S.D. Fla. June 1, 2020). Significantly, unlike the defendants in those cases, Defendant, here, has served a significant portion of his prison sentence—more than 75% of his term.

complete, the public will be protected from further potential criminal conduct. Therefore, an application of the § 3553(a) factors, on balance, do not weigh against granting Defendant's motion for compassionate release. *See United States v. Zukerman*, Crim. No. 16-194, 2020 U.S. Dist. LEXIS 59588, at *15 (S.D.N.Y Apr. 3, 2020) (holding that, at the time of the defendant's sentencing, "the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic.") (citation omitted); *United States v. Salvagno*, Crim. No. 5:02-51, 2020 U.S. Dist. LEXIS 95844, at *20 (N.D.N.Y. Apr. 23, 2020) (explaining that a punishment which includes the risk of serious illness or death "is greater than necessary" to advance the purposes of sentencing" as reflected in the § 3553(a) factors); *United States v. Asaro*, Crim. No. 17-127, 2020 U.S. Dist. LEXIS 68044, at *8 (E.D.N.Y. Apr. 17, 2020) ("I do not believe that continued detention, in light of this risk [of serious illness or death from COVID-19], is an appropriate or proportionate way to further the purposes of sentencing.").

In addition, Defendant has submitted a proposed release plan, under which he has agreed to be placed on home confinement at his mother's residence in Trenton, New Jersey, where his son also resides. Moreover, if released, Defendant's mother has explained that she will assist Defendant in obtaining adequate health insurance, so that he can acquire appropriate medical treatment if needed. Defendant's mother has also explained that Defendant would work as her home health aide, because she is recovering from a knee replacement and requires a walker to ambulate. Significantly, the Probation Office has conducted a home inspection of the proposed residence without any reported problems or concerns. Therefore, I find that Defendant has provided an adequate proposed release plan that will help further the purposes of 18 U.S.C. § 3553(a).

In sum, having considered the applicable factors on this Motion, Defendant's request for compassionate relief is granted, and Defendant shall serve the remaining unserved portion of his sentence on home confinement. *See* U.S.S.G. § 5F1.2 (providing that a court is permitted to impose home confinement as "a condition of probation or supervised release, but only as a substitute for imprisonment."); *see also United States v. Hammond*, Crim. No. 18-184, 2020 U.S. Dist. LEXIS 78646, at *8 (W.D. Pa. May 5, 2020) ("The court acknowledges that Congress gave it authority to modify a sentence to home confinement based on a defendant's motion for compassionate release."); *Zukerman*, 2020 U.S. Dist. LEXIS 59588, at *15 (granting the defendant's motion for compassionate release, and replacing his remaining term of imprisonment with "an equal period of home incarceration."). Moreover, to ensure that Defendant is not an unknown carrier of Covid-19, he shall complete a two-week quarantine period before leaving Fort Dix.

**III.   CONCLUSION**

For the foregoing reasons, Defendant's Motion for Compassionate Release is **GRANTED**.

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge